UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| SHAWNTRELL MARCEL NORINGTON,  )<br>                                                                  )<br>                        Plaintiff,              )<br>       vs.                                            )     1:05-cv-0063-SEB-JMS<br>                                                                  )<br>OFFICER POLAND, et al.,                )<br>                                                                  )<br>                        Defendants.          ) | |

## Entry Concerning Trial and Findings
## Of Fact and Conclusions of Law

This cause came before the court for trial on December 7, 2009. The parties were present in person and by counsel.

Plaintiff Shawntrell Marcel Norington (hereafter "Norington")[1] brought this action seeking damages pursuant to 42 U.S.C. § 1983. This case presents a Fourteenth Amendment due process claim against defendant Officer Aaron Poland (hereafter "Officer Poland"). All other claims against all other parties have previously been resolved.[2] Norington alleges that Poland failed to protect him from an attack by other inmates at the Marion County Jail, a pretrial detention facility, on February 14, 2004.

The court's findings of fact and conclusions of law are set forth below. *Fed. R. Civ. P.* 52(a).

---

[1] Norington is classified by the Department of Correction as a male; however, she self-identifies as a female. It is for this reason that female pronouns are used in reference to Norington throughout this Entry.

[2] Specific claims and parties were dismissed pursuant to 28 U.S.C. § 1915A on March 17, 2005 (dkt 4). Summary judgment was granted in favor of Marion County Sheriff Frank J. Anderson on June 9, 2009 (dkt 133).

## I. Preliminary Issue

On the morning of trial, defense counsel entered a continuing objection to the withdrawal of Officer Poland's exhaustion defense. Defense counsel argued that contrary to the October 5, 2009, Entry, the exhaustion defense had not previously been voluntarily withdrawn. Apparently, Officer Poland sought a trial on the merits and, if that was unsuccessful, a further opportunity to assert the issue of exhaustion. Officer Poland's continuing objection is now **overruled** for the following reasons.

The Prison Litigation Reform Act forbids the filing of a lawsuit under 42 U.S.C. § 1983 by an inmate with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2006). Failure to exhaust administrative remedies is an affirmative defense that must be raised in the pleadings. *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005); *Massey v. Helman*, 196 F.3d 727, 734-35 (7th Cir. 1999). A party who asserts an affirmative defense in a pleading, however, must litigate his case in a manner that is consistent with the way he has pled. "[R]esponsive pleadings . . . do not preserve the defense in perpetuity. Defendants are required at some point to raise the issue by motion for the court's determination." *Jones v. Grubman,* 2009 WL 3049216, *1 (S.D. Ill. 2009) (quoting *Burton v. Northern Dutchess Hosp.*, 106 F.R.D. 477, 481 (S.D.N.Y. 1985)). Consequently, affirmative defenses may be "waived or forfeited[ ] on behalf of an appearing party who elects not to pursue those defenses for itself." *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 599 (7th Cir. 2007).

The procedural circumstances of this case establish that Officer Poland waived his affirmative defense that Norington failed to exhaust available administrative remedies. Although Officer Poland included an affirmative defense of exhaustion in his answer filed on May 17, 2005, he thereafter waived the defense based on his extensive participation in the merits of the lawsuit without ever pursuing the defense. *See Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1296 (7th Cir.1993) (finding that defendants who participated in lengthy discovery and filed various motions for over two and a half years without actively contesting personal jurisdiction waved that defense). Over the course of four years, Officer Poland participated in discovery, filed a motion for summary judgment and motion to dismiss on September 23, 2008, and remained silent as to this one issue that could have potentially disposed of the case.

The failure to timely assert the affirmative defense of exhaustion not only threatens a finding of a waiver, but is a burden on the court because it needlessly prolongs the case. The Seventh Circuit has explained that "in the ordinary case discovery with respect to the merits should be deferred until the issue of exhaustion is resolved. If merits discovery is allowed to begin before that resolution, the statutory goal of sparing federal courts the burden of prisoner litigation until and unless the prisoner has exhausted his administrative remedies will not be achieved." *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *see Perez v. Wis. Dep't of Corr.,* 182 F.3d 532, 536 (7th Cir. 1999)("The statute [requiring administrative exhaustion] can function properly only if the judge resolves disputes about its application before turning to any other issue in the suit."). Although there were ample opportunities for Officer Poland to preserve this defense, he failed to do so. Consequently, through his inattentiveness, he has waived the affirmative defense of exhaustion and his continuing objection is now overruled.

## II.  Findings of Fact[3]

All of the events relevant to the pending claim occurred on February 14, 2004. At that time, Norington was a pre-trial detainee housed at the Marion County Jail in the cell block of 4 East further identified as "4Q". Officer Poland was employed as a corrections officer, or floor officer, at the Jail.

Jail officers do not maintain a continuous physical presence in 4Q block, although they at various points in the day will enter to complete specific tasks. Jail control officers stationed in the main control room monitor the inmates remotely without interruption. Inmates from within the cell block have a variety of means of communicating with Jail officers. One such means is through call cards.  Call cards are message cards written out by inmates and handed directly to Jail staff.  Call cards are used to communicate a variety of types of information, including, but not limited to, requests about inmate commissary, visitation, medical needs, chaplain visits, and indigency requests (i.e. requests for paper and postage). Inmates are also able to use call cards to request reclassification from one block to another for any number of reasons. Inmates may request reclassification and transfer because of a verbal conflict with or harassment by another inmate or because of a fear of physical violence. Because meal times are one of the few occasions when inmates have direct contact with corrections officers, call cards are commonly given to corrections officers at such times. In addition, inmates may seek assistance from a jail control officer by using the call button located on the wall of 4Q block. Inmates have also been known to get the attention of Jail officers by other attention-getting behaviors such as refusing to enter the housing unit, locking themselves in their cells, banging on doors, slamming tables, yelling, and throwing objects.

At approximately 5:30 a.m., on the day in question, Officer Poland, with the assistance of an inmate worker, served breakfast to the inmates housed in 4 East, including those in 4Q. While Officer Poland was serving breakfast, Norington passed three (3) "call cards" to Officer Poland.  Norington had filled out the three call cards to make a single report that four men in the cell block were harassing him and that he feared for his safety.  The men were not identified by name and there was no mention that any of the men had a weapon.

When the Plaintiff handed Officer Poland the three call cards, Officer Poland briefly examined them and noted that all three were addressed to Sergeant Case or another Sergeant. The call cards were not addressed to Officer Poland personally. Officer Poland did not read the call cards at the time after noting that they were addressed to Sgt. Case. Officer Poland placed the call cards in the pocket of his uniform shirt.

---

[3] Certain issues of fact cannot be resolved in this case without making a determination of which version of the pivotal events was more credible. In making this and other determinations as to contested issues, the court has considered the customary factors associated with credibility–*e.g.,* demeanor, detail, consistency, opportunity to observe or perceive the events testified to, etc. It has not relied solely on the number of witnesses who related a particular event or on any other single factor.

When Norington presented the call cards to Officer Poland, he did not appear to be worried, anxious or otherwise concerned. Officer Poland described him as "happy." Nothing about Norington's appearance indicated to Officer Poland that he had been threatened with violence or was in fear of a physical attack. Norington never verbally communicated to Officer Poland that there was a threat to his safety. Norington took his breakfast tray as it was delivered to him and returned to the 4Q block. Officer Poland continued serving breakfast to 4 East prisoners and secured his inmate worker. Throughout the breakfast serving process, Officer Poland received several other call cards from other inmates relating to a variety of matters and requests. Officer Poland testified that during the time he was on 4 East serving breakfast, he did not witness any fight, commotion or attack.

After Officer Poland left 4 East, he delivered the call cards to Sgt. Mark Hurt.[4] Officer Poland has not had possession of the call cards since that time.[5]

Sometime shortly thereafter, Norington was injured in an altercation with three other prisoners, Ulysses Poston, Michael Henderson, and Bryant Stone. [The fourth man referenced in the call card did not participate in the attack and was not identified at trial.] The attack began outside Norington's cell. All three men struck Norington and Michael Henderson stabbed Norington while wielding a small shank. Later, Henderson entered Norington's cell and stabbed Norington again. Norington suffered a total of five stab wounds. In the second phase of the attack, Norington fought back against Henderson. After the attack, Norington sought protection by running into the corridor which was open and provided a refuge from his attackers.

Meanwhile, Sgt. Hurt, who had promptly read the call cards after their delivery to him by Officer Poland, determined that Norington should be relocated immediately because of the possible threat to Norington's safety, even though the call cards contained no mention of a weapon, a specific threat of violence, or the names of the specific actors. At Sgt. Hurt's direction, Officer Poland ordered Jail Control Officer Bates by radio to immediately contact 4Q and direct Norington into a secure corridor, or sally port, between 4Q and its neighbor block 4P. Sgt. Hurt and Officer Poland both proceeded forthwith to the elevator en route to 4Q to remove Norington from the sally port to reclassify her and to investigate the threat.

While en route, Officer Poland and Sgt. Hurt were diverted to another location to attend to a "response call" on a third floor female unit "3-B" regarding a report of a fight. A "response call" is an emergent call in which all available officers are required to respond for officer safety in order to diffuse a reported dangerous situation in the Jail. When Officer

---

[4] "Sergeant Case" identified on the call cards referred to Sergeant James Case, a Jail supervisor who worked first shift from approximately 7:00 a.m. to 3:00 p.m. On February 14, 2009 at 5:30 a.m., Sgt. Case was not present at the Jail. As a result, the cards were delivered instead to the sergeant on duty, Sgt. Hurt.

[5] The call cards that Norington gave to Officer Poland are presumed to have been disposed of at some point between February 14, 2004, and the present, and thus were not available as evidence at trial. There is no Jail policy requiring their retention.

Poland and Sgt. Hurt arrived at 3-B, they determined that the response call did not warrant their involvement. While they were on 3-B, Officer Bates radioed them to report that an inmate had been placed in the 4Q sally port and was throwing food trays into the 4 East corridor. Officer Poland went immediately to 4 East to resolve the situation.

Approximately 25 minutes after Norington had provided Officer Poland with the call cards containing the information relating to the impending threats to his safety, Officer Poland returned to the 4Q cell block to find that Norington had been attacked by other inmates. Norington was immediately provided with medical care, including six stitches in his cheek to repair his stab wounds. He did not request or receive pain medication. At trial, Norington testified and introduced photos in evidence to show that he incurred minor scars on his face, back, and shoulder as a result of the incident. Following the attack, Norington was placed in segregation and an investigation of the assault was conducted.

### III. Conclusions of Law

Based on the foregoing findings of fact, the court enters the following conclusions of law:

### A. Applicable Law

Norington's claim is brought pursuant to 42 U.S.C. § 1983. "Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights elsewhere conferred." *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)). Accordingly, "the first step in any [§ 1983] claim is to identify the specific constitutional right infringed." *Albright v. Oliver,* 510 U.S. 266, 271 (1994). Norington was a pretrial detainee at the time the claim a rose in this action. Pretrial detainees are entitled under the Fourteenth Amendment's due process clause to the same basic protections provided convicted prisoners under the Eighth Amendment. *Thomas v. Cook County Sheriff's Dep't.*, 2009 WL 4251079, *16, fn. 1 (7th Cir. December 1, 2009). This includes the right to be protected from violence at the hands of other inmates.

"There is no doubt that jail officials have a duty to protect detainees from violence at the hand of other inmates. . . . But *liability* of a jail officer for failure to protect an inmate only materializes if the officer knew the inmate faced a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008) (internal citations and quotations omitted). A general risk of violence is not enough, because prisons are inherently dangerous places. *See Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005). Instead, Norington must show a tangible threat to his safety or well-being. *See Grieveson,* 538 F.3d at 777.

To prove such deliberate indifference, Norington must show that Officer Poland was subjectively aware of the risk to her, yet failed to take reasonable measures to prevent it. *See Farmer v. Brennan*, 511 U.S. 825, 844; *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006). "A prisoner normally proves actual knowledge of impending harm by showing that he complained to officials about a specific threat to his safety." *McGill v. Duckworth*, 944

F.2d 344, 349 (7th Cir.1991). "Knowledge of a risk can be shown if an official was exposed to information from which the inference could be drawn that a substantial risk exists, and he or she also draws the inference." *Pierson v. Hartley,* 391 F.3d 898, 902 (7th Cir. 2004); *see also Boyce v. Moore,* 314 F.3d 884, 888 (7th Cir. 2002).

In addition to denying any liability for a violation of Norington's Fourteenth Amendment rights, Officer Poland has asserted that he is entitled to a judgment in his favor based on the doctrine of qualified immunity. In a qualified immunity inquiry, the first question that must be answered is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz,* 533 U.S. 194, 201 (2001). The second question is "whether the right was clearly established." *Id.* The sequence of the *Saucier* inquiry is no longer mandatory, but often beneficial. *Pearson v. Callahan,* 129 S. Ct. 808, 818-20 (2009).[6]

### B. Discussion

The evidence adduced at trial established that Officer Poland was handed the call cards by Norington laying out his concerns about his safety during the time Officer Poland was engaged in serving breakfast to the inmates. The call cards contained general allegations of harassment by four cell mates, but did not identify or name the cell mates or mention a weapon.[7] Officer Poland made a quick, cursory review of the call cards, noting

---

[6] In this case, the issue of qualified immunity was properly reserved for decision at this time. Officer Poland's motion for summary judgment was denied because there was a factual dispute between the parties regarding whether "Officer Poland was deliberately indifferent to a serious risk to the plaintiff's safety by knowing of the serious risk of the plaintiff being harmed and deciding not to do anything to prevent that harm from occurring even though he could have easily done so." Dkt 133, p. 2. These factual disputes precluded a preliminary determination of whether Officer Poland was entitled to the protections of qualified immunity, thus requiring a trial on the merits. *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) ("When the qualified immunity inquiry cannot be disentangled from disputed facts, the issue cannot be resolved without a trial.") (citing *Clash v. Beatty*, 77 F.3d 1045 (7th Cir. 1996); *Olson v. Bloomberg,* 339 F.3d 730, 735 (8th Cir. 2003)("But if there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment.").

[7] Norington argues that she is entitled to an inference that supports her version of what was on the call cards because the call cards were destroyed and thus not available as evidence. "[S]poliation may be used to establish an inference that the evidence was unfavorable to the party responsible for its unavailability. . . ." *Yan v. Illinois Farmers Ins. Co.*, 2005 WL 2175525, 2 (S.D. Ind. 2005). "Spoliation refers to the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. . . . The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation, but the power is limited to that necessary to redress conduct which abuses the judicial process." *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (internal quotations and citations omitted). An adverse inference against Officer Poland is not warranted, however, in these circumstances. Officer Poland gave the call cards to Sgt. Hurt and never regained possession of them. There

6

that they were to be delivered to Sgt. James Case or another sergeant, and then placed them in his pocket to pass along to the specified addressee.

Officer Poland's actions in delivering the cards to the sergeant on duty, Sgt. Hurt, without immediately reading them to determine their contents or taking any other action in response were reasonable under the circumstances.[8] First, nothing in Norington's demeanor was indicative of her having received a threat of violence or of any other emergency. Second, Officer Poland responded as the cards instructed, by delivering them to their intended recipient, Sgt. Case or another Sergeant.  Third, Norington had several other means available to her to secure her prompt separation from the aggressions of other inmates, none of which she chose to avail herself of.  For example, she could have used the call button located on the wall in 4Q which would have immediately connected her to an officer in Jail control or she could have locked herself in her cell. Also, inmates as well as jail officers such as Officer Poland knew that call cards were used on a daily basis to relay non-immediate concerns and emergent needs, so once Officer Poland determined that the information on the call card given to him by Norington did not require immediate attention, which conclusion was not unreasonable, and took steps to deliver them to the designated addressee, that too was reasonable under the circumstances.

At the time the call cards were delivered to Sgt. Hurt, he read them and immediately ordered that Norington be pulled from 4Q and reclassified to another block. Officer Poland simply was not aware of a risk of harm to Norington until the cards were read to him by Sgt. Hurt.

After the call cards were read by Sgt. Hurt and their message communicated to Officer Poland, Officer Poland responded appropriately to Norington's risk of harm. At the direction of Sgt. Hurt, Officer Poland ordered Jail Control Officer Bates, who was in the 5 East control area, to secure Norington in a safe corridor, and Officer Bates did so, although by this time, Norington was already injured. Once prison officials know about a serious risk of harm, they have an obligation to take measures to abate it. *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006). However, officials who take reasonable steps to prevent harm to a prisoner cannot be held liable for subsequent injuries, even if the harm is not averted. *Bagola v. Kindt*, 131 F.3d 632, 646 (7th Cir. 1997) ("An official's duty under the Eighth Amendment is not to provide complete safety; it is to ensure 'reasonable safety.' . . . Therefore, reasonable measures taken to avert known risks will insulate a prison official from Eighth Amendment liability, even if those measures proved unsuccessful." (citations omitted)).

Officer Poland's actions were at each juncture reasonable under the then-existing circumstances. The fact that Norington was injured before she could be removed from

---

is no evidence that Officer Poland was responsible for the destruction of the call cards.

[8] Lt. Clemmons and Sgt. Case testified that their practice is to read all of the call cards handed to them, even if they are not specifically addressed to them. Reading each call card maybe a best practice, but that issue is not before us for resolution.

7

danger is, indeed, unfortunate, but there simply is no evidence of deliberate indifference to the risks facing Norington on the part of Officer Poland. Having concluded that Fourteenth Amendment constitutional violation occurred, we also hold that Officer Poland is entitled to qualified immunity.

### III. Conclusion

Norington has failed to demonstrate by a preponderance of the evidence that any violation of her federally secured rights occurred based on the incident alleged in his complaint. Based on the facts and law set forth in this Entry, therefore, Officer Poland is entitled to prevail.[9]

This ruling resolves all claims against all parties in this action. A final judgment consistent therewith shall issue. The parties shall bear their own costs in this action.

**IT IS SO ORDERED.**

Date: 12/15/2009

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

---

[9] The Court expresses its great appreciation to plaintiff's counsel who at the Court's behest represented Norington, pursuant to Local Rule 4.6. Counsel's representation was effective and professional and in all ways helpful both to Norington and to the Court.